IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MADELEINE CONNOR, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:17-CV-827-RP |
| LEAH STEWART, ERIC CASTRO, and CHUCK MCCORMICK, | § § § § | |
| Defendants. | § § | |

## **ORDER**

Before the Court are a motion to dismiss, (Dkt. 9), and a motion for sanctions, (Dkt. 6), filed by Defendants Leah Stewart, Eric Castro, and Chuck McCormick (collectively, "Defendants"). Having reviewed the parties' briefing, the evidence, and the relevant law, the Court finds that the motions should be granted.

Plaintiff Madeleine Connor ("Connor") lives in the Lost Creek Municipal Utility District ("Lost Creek"), and Defendants are all directors of Lost Creek. (Compl., Dkt. 1, at 1–2). Connor sued Defendants on August 25, 2017. (Compl., Dkt. 1). Connor alleged that Defendants voted to send a "litigation status update" to the residents of Lost Creek in August 2017, and that the draft update contained misleading statements and "material untruths." (*Id.* at 2). Connor alleged that Defendants voted to issue the update to retaliate against her for exercising her constitutional rights to associate, petition the government, and speak. (*Id.* at 2–3). Her initial complaint asked the Court to enjoin Defendants from issuing the update. (*Id.* at 5).

Connor never served her original complaint on Defendants. Seven months later, Defendants filed a motion to dismiss, (Dkt. 5), and a motion for sanctions, (Dkt. 6). Connor responded by amending her complaint, (Dkt. 8), adding new factual allegations and seeking damages under 42

1

U.S.C. § 1983 ("Section 1983") because Defendants had disseminated the update. (Am. Compl., Dkt. 8, at 4–6). The Court subsequently entered an order finding that Connor's amended complaint superseded her original complaint and rendered Defendants' first motion to dismiss moot. (Order, Dkt. 29).

Defendants then filed another motion to dismiss, (Dkt. 9), and sought to supplement their motion for sanctions based on Connor's amended complaint, (Dkts. 10, 13). Connor asked the Court to strike those supplemental filings as untimely. (Dkts. 11, 15). The Court has since stayed this case pending the disposition of Defendants' second motion to dismiss. (Order, Dkt. 25).

## I. MOTION TO DISMISS

In her amended complaint, Connor seeks relief under Section 1983 for violations of her rights under the First and Fourteenth Amendments to the United States Constitution. (Am. Compl., Dkt. 8, at 2). Connor alleges that Defendant retaliated against her for "engaging in her First Amendment rights to speech, petition, and assembly." (*Id.*). She alleges that Defendants published a "litigation status update" that was "misleading and contains material untruths and constitutes intentional retaliation for engaging in [her] right to speak out against the government and her right to petition." (*Id.* at 3). According to Connor, the update is "clearly intended to damage [her] professional reputation and her standing in the community" because it contains misleading or untrue statements. (*Id.* at 4).

Connor alleges that Defendants also retaliated against her by filing a motion to dismiss in a state-court proceeding. (*Id.*). According to Connor, Defendants "intentionally presented a motion to the state court . . . even though this Court had DENIED it." (*Id.*). Connor alleges that Defendants filed the motion to "punish[ ] her for daring to speak out and assembling with other residents in order to redress their grievances." (*Id.*).

Defendants argue that Connor's claims should be dismissed under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). Because the Court finds that dismissal is appropriate under Rule 12(b)(6), it need not analyze the merits of Defendants' 12(b)(1) arguments.

*A. Legal Standard*

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A court may consider documents attached to the complaint. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

*B. Discussion*

Connor's First Amendment retaliation claim presents a dispute that is now familiar to this Court; she has twice before sued Defendants in this Court for the same cause of action. *See McIntyre v. Castro*, No. 1-15-CV-1100 RP, 2016 WL 1714919, at *4 (W.D. Tex. Apr. 8, 2016), *aff'd*, 670 F. App'x 250 (5th Cir. 2016), *reh'g denied* (Dec. 9, 2016) ("*McIntyre I*"); *McIntyre v. Castro*, No. 1:16-CV-

3

490 RP, 2017 WL 1483572, at *3 (W.D. Tex. Apr. 25, 2017), *aff'd in part sub nom. Connor v. Castro*, 719 F. App'x 376 (5th Cir. 2018) ("*McIntyre II*").

In *McIntyre I*, Connor alleged that Defendants sent a "pejorative" email with "evil intent" to Lost Creek residents "purporting to be an 'update' about" a lawsuit she filed against Defendants. Compl. at 11, *McIntyre I*, Dkt. 5. Reviewing the email, the Court found that it was not pejorative, but rather that it "simply state[d] the basis of Plaintiffs' claims and that Defendants rebut them." *McIntyre I*, 2016 WL 1714919, at *4. The Court held that Connor's allegations fell "well short of supporting a claim for First Amendment retaliation" and dismissed her claim. *Id.* Connor appealed, and the United States Court of Appeals for the Fifth Circuit ("Court of Appeals") affirmed the Court's opinion, specifically finding that Connor's allegations did "not constitute retaliation." *McIntyre v. Castro*, 670 F. App'x 250, 251 (5th Cir. 2016), *reh'g denied* (Dec. 9, 2016).

Within a week of the Court's order in *McIntyre I*, and while her appeal in that case was pending, Connor again sued Defendants. *See* Notice of Removal at 3, *McIntyre II*, Dkt. 1. Connor's *McIntyre II* complaint—her seventh amended petition in state court—contained a First Amendment retaliation claim that this Court found to be "nearly identical." *McIntyre II*, 2017 WL 1483572, at *4. The only new factual allegation in Connor's complaint was that Defendants unlawfully used tax funds to draft a bar complaint against her. *Id.* The Court again dismissed her First Amendment retaliation claim. *Id.* Connor sought to amend her complaint to add another First Amendment retaliation claim, which the Court did not permit. *Id* at *6. Connor appealed that decision, arguing that the Court erred by failing to permit her to add another First Amendment retaliation claim. *Connor v. Castro*, 719 F. App'x 376, 379 (5th Cir. 2018). The Court of Appeals affirmed this Court's decision, agreeing that it would have been futile to permit her to add the claim. *Id.* at 380. Connor now sues the same Defendants for a third time, again alleging First Amendment retaliation, this time on the basis of a different litigation update.

To establish a claim for retaliation in violation of the First Amendment, a plaintiff must show that: (1) she "engaged in constitutionally protected activity, (2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "Although some actions may have . . . the effect of chilling . . . protected speech, they are not actionable." *Pierce v. Texas Dep't of Criminal Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). Public criticism and false accusations "are not actionable under our First Amendment retaliation jurisprudence." *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999).

Like the email motivating Connor's retaliation claim in *McIntyre I*, the update at issue in this action describes the nature of Connor's claims and denies wrongdoing. (Litigation Status Update, Dkt. 5 Ex. B, at 20–21).[1] The update also, and principally, summarizes the procedural history of Connor's various lawsuits against Defendants and other Lost Creek directors. (*Id.*). For example, the update states that a state court judge awarded Defendants attorney's fees as a sanction and provides a link to the court's order. (*Id.* at 20). The update states that this Court dismissed the claims alleged in her *McIntyre II* complaint and provides a link to that order. (*Id.*). The update states that Connor has appealed one ruling, filed a motion for a new trial, and "continues to pursue claims" against the Lost Creek directors. (*Id.* at 21).

Connor calls the update "misleading, partially false, and unnecessary." (Am. Compl., Dkt. 8, at 2). She alleges that the update contains "material untruths." (*Id.* at 3). These conclusory statements are not, however, supported by any factual allegations in her amended complaint. In fact, the only

---

[1] Connor attached an unpublished draft of the litigation update to her complaint. (Draft update, Dkt. 8-1). Defendants attached a published version, which contains different text, to their first motion to dismiss. (Dkt. 5 Ex. B, at 20–21). Because the update is attached to Defendants' first motion to dismiss and because Connor refers to it in her amended complaint and it is central to her claim, the update considered part of Connor's pleadings and is therefore susceptible to consideration for purposes of deciding Defendants' 12(b)(6) motion. *Causey*, 394 F.3d at 288.

5

specific statement identified as an alleged falsehood—that the Lost Creek directors "have prevailed in every substantive and procedural ruling to date"—is admitted in the complaint to be draft language that was ultimately omitted from the version of the update that Defendants published. (*Id.*). These conclusory allegations cannot be taken as true. On the contrary, the published version of the litigation update—which is considered part of Connor's pleadings for purposes of deciding Defendants' motion—does not contain false or misleading statements. Instead, it fairly characterizes the outcomes of Connor's numerous lawsuits against them, and it was distributed to an audience that has an interest in the status of Connor's litigation against the Lost Creek directors.

More to the point, even if it were true that Defendants had published false statements about Connor's litigation against them, she would nevertheless fail to state a claim for First Amendment retaliation because false statements are not actionable for such a claim. *See Colson*, 174 F.3d at 512. In *Colson*, the plaintiff alleged that the defendants retaliated against her by publishing a pamphlet and recall petition misleadingly suggesting that the plaintiff had committed a crime, after the defendants had unsuccessfully urged the district attorney and a grand jury to indict her. *Id.* at 501–505, 512. Even those allegations were held to be "mere accusations that are not actionable under § 1983." *Id.* at 512. The allegations made by Connor—that Defendants painted a misleadingly negative picture of her success in suing them—are much less serious than the allegations in *Colson*, in which defendants allegedly branded the plaintiff as a criminal. Accordingly, Connor's conclusory allegations would not be actionable even if they could be taken as true and even if the Court were to disregard the actual text of the published version of the update.

Moreover, Connor's arguments suggest that her First Amendment retaliation claim is not made in good faith. Connor argues that the update is misleading because it does not acknowledge that the Court "plainly denied [Defendants'] motion to dismiss filed under Chapter 27 of the Civil Practices and Remedies Code . . . [their] motion for a hearing on the anti-SLAPP motion . . . [and

6

their] motion under the Texas Tort Claims Act" in *McIntyre II*. (Pl.'s Resp. Second Mot. Dismiss, Dkt. 16, at 3 (citing *McIntyre II*, 2017 WL 1483572)). In *McIntyre II*, the Court declined to exercise supplemental jurisdiction over Connor's state law claims after it had dismissed all of her federal claims. *McIntyre II*, 2017 WL 1483572, at *4–5. Connor, an attorney licensed to practice in Texas and admitted to practice in federal court, should understand that declining to exercise jurisdiction over a set of claims is not equivalent to denying a motion to dismiss those claims.

Likewise, Connor's claim that Defendants' motion to dismiss filed in state court was a retaliatory action meant to punish her for exercising constitutional rights is redolent of bad faith. Connor alleges that Defendants "intentionally presented a motion to the state court . . . even though this Court had DENIED it." (Am. Compl., Dkt. 8, at 4). Connor complains that Defendants "presented the fully-adjudicated [sic] claim to the [state court] on remand . . . as if this court had not already denied the claim." (*Id.*). Connor calls the motion "flagrant forum shopping" designed to "punish[ ] her for daring to speak out." (*Id.*).

Again, Connor has the legal training and experience to understand that (1) the state-law portion of Defendants' motion was not adjudicated by this Court, which remanded Connor's state-law claims, and (2) that it is not "forum shopping" for a party to file a motion with a court to which that party has been remanded involuntarily. More fundamentally, Connor's argument that Defendants intended to punish her by filing a valid motion to defend themselves against a lawsuit that she filed against them not only fails to state a plausible claim for First Amendment retaliation, it is a frivolous claim that Connor should understand to be frivolous. Connor's First Amendment retaliation claims are dismissed.

## II. MOTION FOR SANCTIONS

Defendants seek sanctions under Federal Rule of Civil Procedure 11(c) and 28 U.S.C. § 1927. (Mot. Sanctions, Dkt. 6, at 7). Defendants argue that Connor has litigated in bad faith to harass and threaten them and that she has unreasonably multiplied proceedings. (*Id.* at 1–6).

Connor, meanwhile, argues that it is Defendants who have filed frivolous motions and unreasonably multiplied proceedings. (Resp. Mot. Sanctions, Dkt. 7, at 4–5). Connor argues that Defendants "reached down and [blew] life into [an] impotent suit" when they filed their first motion to dismiss and that Defendants' motion for sanctions is frivolous—and retaliatory—because this Court and the Court of Appeals have denied previous motions for sanctions. (*Id.*). Connor describes herself as the victim of Defendants' "unending quest to punish her" and asks the Court to award her sanctions.

Rule 11 permits the Court to impose an appropriate sanction if a pleading, motion, or other paper is presented for any improper purpose, such as to harass or needlessly increase the cost of litigation, or if the claims or arguments therein are frivolous. Fed. R. Civ. P. 11(b), (c). "[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); *see also Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 533 (5th Cir. 1992) ("The proper objectives of Rule 11 sanctions are to deter, to punish and to compensate opposing parties."). The Court should impose the least severe sanctions that would adequately deter a Rule 11 violation. Fed. R. Civ. P. 12(c)(4). When warranted, sanctions may include an order directing payment to an opposing party of some or all of the reasonable attorney's fees or costs incurred as a result of the violation. *Id.* In determining whether a party pursued an illegitimate purpose to increase costs or to harass a party, courts look to "objectively ascertainable circumstances rather than subjective intent." *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 585–86 (5th Cir. 2008) (quotation marks and citation omitted).

In addition to monetary sanctions, "[a] district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures*, 513 F.3d 181, 187 (5th Cir. 2008). In determining whether to impose such an injunction, the Court must "weigh all of the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular whether she has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.* at 189. A pre-filing injunction must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.* at 190.

Having already summarized the history of Connor's litigation against Defendants, the Court will not do so in detail again. *See supra* at 3–4; *McIntyre II*, 2017 WL 1483572, at *1–2. It will suffice to reiterate that in *McIntyre II*, the Court found that the record gave the Court "the impression that the current litigation may be motivated as much or more by animosity between Connor and the Defendants than any legally cognizable injury Plaintiffs may have suffered." *McIntyre II*, 2017 WL 1483572, at *6. The Court stated that Connor's conduct, which included her "presentation of an objectively benign e-update as defamatory," was troubling. *Id.* The Court found that her conduct fell "well short of what this Court expects of its officers" and warned Connor that it would consider sanctions if she exhibited similar conduct in the future. *Id.*

Despite that warning, Connor filed this lawsuit, in which she again alleges a First Amendment retaliation claim and again on the basis of an objectively benign litigation update. Connor's claims have not been and are not bow well-grounded in law or fact; neither her complaint nor her response to Defendants' motion to dismiss cite any law suggesting that her allegations might state a plausible claim for First Amendment retaliation. Nonetheless, her original complaint and amended complaint in this action repeat a claim that has been twice rejected by this Court and once

9

by the Court of Appeals. *McIntyre I*, 2016 WL 1714919, at *4; *McIntyre II*, 2017 WL 1483572, at *4; *McIntyre v. Castro*, 670 F. App'x 250, 251 (5th Cir. 2016), *reh'g denied* (Dec. 9, 2016). Her only new theory of retaliation—that Defendants intended to punish her by filing a valid defensive motion in a lawsuit that she brought against them—is one that Connor should understand to be frivolous. Connor's pattern of repeatedly bringing nearly identical meritless claims against Defendants suggests that her complaint was filed for the improper purpose of harassing Defendants.

Connor's filings in this case similarly suggest that she has presented motions for improper purposes. Connor filed a proposed scheduling order, (Dkt. 22), represented that she believed there was a "probable need for electronic forensic discovery," (Pl.'s Report, Dkt. 21, at 2), and asked the Court not to stay this action because it would "serve the ends of justice" to issue a scheduling order and because Defendants "should not be protected from discovery any longer." (Pl.'s Resp. Mot. Prot. Order, Dkt. 23, at 2). One week later, Connor reversed her litigation position, argued that the Court was "prohibited from issuing any order other than an order of dismissal without prejudice," and asked the Court to dismiss the case under Federal Rule of Civil Procedure 4(m) because she had failed to timely serve her original complaint. (Mot. Recons., Dkt. 25, at 2–3). Connor's sudden reversal—and her request that the Court take an action for which she could have previously moved but that she instead foreclosed by amending her complaint—suggests that her insistence that Defendants be subjected to the costs of discovery was not made in good faith. Indeed, it leads the Court to conclude that she sought discovery to increase the cost of litigation to Defendants, but changed her position only once it became clear that the Court was skeptical of her cause of action.

Considered in the context of Connor's repeated litigation against Defendants, and in the context of repeated rejections of nearly identical claims by this Court and the Court of Appeals, the Court concludes that Connor's original complaint and subsequent filings in this action have been presented for the improper purpose of harassing and imposing litigation costs on Defendants.

Accordingly, sanctions are appropriate under Rule 11(c). Because Connor's apparent purpose is to impose litigation costs on Defendants for purposes of harassment, the appropriate Rule 11 sanction is to require Connor to pay Defendants' reasonable attorney's fees and expenses related to this action.[2] Defendants' motion for sanctions should be granted.

The Court also concludes that a pre-filing injunction may be appropriate in this case. As discussed in more detail above, Connor has displayed a history of filing harassing lawsuits against Defendants that do not appear to be motivated by good faith; this litigation has significantly burdened both the Defendants and this Court; and monetary sanctions are unlikely to be adequate on their own, given that monetary sanctions issued by a state court in similar litigation did not deter Connor from filing this action. Defendants have not asked for a pre-filing injunction, and "[n]otice and a hearing are required if the district court *sua sponte* imposes a pre-filing injunction." *Baum*, 513 F.3d at 189. This order will serve as notice; a hearing on the imposition and scope of a pre-filing injunction will be held at a later date, *see infra* at 12.

### III. LEAVE TO AMEND

In her response to Defendants' second motion to dismiss, Connor does not ask the Court for leave to amend her complaint a second time. (*See* Resp. Second Mot. Dismiss, Dkt. 16). When a plaintiff fails to request leave to amend or indicate what might be added to the complaint if amendment were allowed, a district court may dismiss the cause of action with prejudice. *See Joseph v. Bach & Wasserman, L.L.C.*, 487 Fed. App'x. 173, 178 (5th Cir. 2012). Here, because Connor has neither requested leave to amend her complaint again nor indicated what she might add to a second amended complaint, the Court declines to *sua sponte* permit her to amend her complaint a second time.

---

[2] "A party seeking Rule 11 costs and attorney's fees has a duty to mitigate those expenses, by correlating his response, in hours and funds expended, to the merit of the claims. . . . If a litigant fails to do so, the district court may exercise its discretion and either reduce the award accordingly, or in some instances, decline to award any expenses." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988).

11

## IV. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 9), is **GRANTED**. Connor's claims against Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' motion for sanctions, (Dkt. 6), is **GRANTED**. Defendants shall submit a motion for reasonable attorney's fees and expenses related to this action on or before **June 22, 2018**.

**IT IS FINALLY ORDERED** that the parties shall attend a hearing to consider the imposition and scope of a pre-filing injunction. The hearing will take place on **July 24, 2018, at 1:00 p.m.** The hearing will take place at the United States Courthouse located at 501 West Fifth Street in Austin, Texas.

Connor may file a brief related to the hearing **no later than July 6, 2018.** Connor's brief shall not exceed 10 pages. Defendants may file a response, if at all, **no later than July 13, 2018**. Defendants' response shall not exceed seven pages. Connor may file a reply, if at all, **no later than July 20, 2018**. Connor's reply shall not exceed five pages.

**SIGNED** on June 14, 2018.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE