IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MADELEINE CONNOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:17-CV-827-RP |
| | § | |
| LEAH STEWART, | § | |
| ERIC CASTRO, and | § | |
| CHUCK MCCORMICK, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is a Motion for Attorney's Fees and Costs, (Dkt. 32), filed by Defendants Leah Stewart, Eric Castro, and Chuck McCormick (collectively, "Defendants"). Having reviewed the parties' briefing, the evidence, and the relevant law, the Court finds that the motion should be denied. The Court will enter a pre-filing injunction against Connor *sua sponte*.

## I. BACKGROUND

Plaintiff Madeleine Connor ("Connor") lives in the Lost Creek Municipal Utility District ("Lost Creek"), and Defendants are all directors of Lost Creek. (Compl., Dkt. 1, at 1–2). Connor sued Defendants on August 25, 2017. (Compl., Dkt. 1). Connor alleged that Defendants voted to send a "litigation status update" to the residents of Lost Creek in August 2017, and that the draft update contained misleading statements and "material untruths." (*Id.* at 2). Connor alleged that Defendants voted to issue the update to retaliate against her for exercising her constitutional rights to associate, petition the government, and speak. (*Id.* at 2–3). Her initial complaint asked the Court to enjoin Defendants from issuing the update. (*Id.* at 5).

Connor never served her original complaint on Defendants. Seven months later, Defendants filed a motion to dismiss, (Dkt. 5), and a motion for sanctions, (Dkt. 6). Connor responded by amending her complaint, (Dkt. 8), adding new factual allegations and seeking damages under 42

1

U.S.C. § 1983 ("Section 1983") because Defendants had published the update. (Am. Compl., Dkt. 8, at 4–6). The Court subsequently entered an order finding that Connor's amended complaint superseded her original complaint and rendered Defendants' first motion to dismiss moot. (Order, Dkt. 29).

Defendants then filed another motion to dismiss, (Dkt. 9), and sought to supplement their motion for sanctions based on Connor's amended complaint, (Dkts. 10, 13). The Court granted Defendants' second motion to dismiss and their motion for sanctions. (Order, Dkt. 31). In its order, the Court found than Connor filed this action for the improper purpose of harassing Defendants. (*Id.* at 10). The Court ordered Connor to pay reasonable attorney's fees and expenses related to this action and gave her notice of its intent to impose a pre-filing injunction against her. (*Id.* at 11). The Court then held a hearing related to the imposition and scope of a pre-filing injunction. (Dkt. 40).

## II. DISCUSSION

*A. Attorney's Fees*

Because the Court found that Connor had violated Rule 11, (Order, Dkt. 31, at 10–11), it ordinarily must impose sanctions. *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988) ("[A] district court must impose sanctions once a violation of Rule 11 is found, but the district court retains broad discretion in determining the 'appropriate' sanction under the rule."). The Court already found that monetary sanctions were appropriate to deter Connor from using the courts to impose litigation costs on Defendants for the purpose of harassment. (Order, Dkt. 31, at 11). What remains to be determined, then, is the reasonableness of Defendants' fee request.

Defendants request $16,235.16 in attorney's fees and expenses. (Mot. Att'y Fees, Dkt. 32, ¶ 18). Connor objects on a variety of grounds and asks the Court to award no fees at all. (Resp. Mot. Att'y Fees, Dkt. 35, at 15). The Court need only address Connor's argument that Defendants failed to comply with Rule 11's "safe harbor" provision, (*id.* at 13–14), because that issue is dispositive of whether the Court can order Rule 11 sanctions in this instance.

Although Connor failed to raise this argument in her briefing on Defendants' motion for sanctions, (Resp. Mot. Sanctions, Dkt. 7), she now points out that they failed to serve their motion for sanctions on her before filing with the Court as required by Rule 11. Fed. R. Civ. P. 11(c)(2). (Resp. Mot. Att'y Fees, Dkt. 35, at 13–14). Her argument is not waived, because compliance with Rule 11's safe harbor provision is mandatory—a court cannot impose Rule 11 sanctions if the moving party failed to provide safe-harbor notice. *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995). Informal notice is insufficient; the moving party must serve the motion for sanctions in accordance with Federal Rule of Civil Procedure 5. *See In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008). The moving party has the burden to show compliance with Rule 11. *Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 498 (N.D. Tex. 2016).

Defendants have not met their burden. In their motion for sanctions, they aver that they "warned [Connor] about the frivolous nature of [her] claims and [gave her] an opportunity to nonsuit or withdraw [her claims] in satisfaction of Rule 11(c)(2)." (Mot. Sanctions, Dkt. 6, ¶ 14). They do not provide any evidence that they served their motion in accordance with Rule 5, as Rule 11(c)(2) requires.[1] On the contrary, their billing records list no service of the motion prior to its filing on March 1, 2018, suggesting that it was never served. (*See* Tschirhart Aff., Dkt. 32-1). Defendants' failure to show their compliance with Rule 11's safe harbor provision precludes entry of a Rule 11 sanction. *Elliott*, 64 F.3d at 216. Their motion for attorney's fees must be denied.

## B. Pre-Filing Injunction

"A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures*, 513 F.3d 181, 187 (5th Cir. 2008). In determining whether to impose such an injunction, the Court must "weigh all of the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular

---

[1] Although there is evidence that Defendants emailed their motion for Rule 11 sanctions to Connor in August 2017, (*see* Emails, Dkt. 39-1), Defendants neither proffered this evidence in support of their motion for sanctions or their motion for attorney's fees, nor did they offer any evidence that Connor had consented to service by electronic means in writing. *See* Fed. R. Civ. P. 5(b)(2)(E).

whether she has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.* at 189. A court must also "make a specific finding of bad faith before using its inherent power to impose sanctions." *Meyers v. Textron Fin. Corp.*, 609 F. App'x 775, 779 (5th Cir. 2015). Federal courts can consider a litigant's conduct in state court to determine whether that litigant's conduct in federal court was undertaken in bad faith or for an improper motive. *Baum*, 513 F.3d at 191. A pre-filing injunction must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.* at 190. The Court gave Connor the required notice and hearing, (Dkts. 31, 40), to impose a pre-filing injunction against her. *Baum*, 513 F.3d at 189.

Considering the first *Baum* factor, the Court finds that Connor has a history of filing vexatious and harassing lawsuits against Defendants—both in this Court and others. The record before the Court in April 2017 was already sufficient to create the impression that Connor's last round of litigation against Defendants "may be motivated as much or more by animosity between Connor and the Defendants than any legally cognizable injury Plaintiffs may have suffered." *McIntyre v. Castro (McIntrye II)*, No. 1:16-CV-490 RP, 2017 WL 1483572, at *6 (W.D. Tex. Apr. 25, 2017). That impression was created by the entire record before the Court, including her communications to Defendants; her "prior presentation of an objectively benign e-update as defamatory"; her decision to reassert a claim in seventh amended pleading that was "nearly identical" to a previously dismissed claim; and her decision to add allegations that were "plainly insufficient" in light of this Court's prior orders. *Id.* Despite being "troubled by Connor's conduct" in her last round of litigation against Defendants, the Court declined to impose sanctions but warned Connor that her conduct "f[ell] short of what this Court expects of its officers." *Id.*

4

In addition to her history of litigation before this Court, Connor has sued these Defendants and other Lost Creek directors in Texas state court. *See* Ninth Amended Pet., *Connor v. Castro et al.*, No. D-1-GN-15-003714 (419th Dist. Ct., Travis Cnty., Tex. May 5, 2018); Fifth Amended Pet., *Connor v. Stephenson et al.*, No. D-1-GN-16-005883 (200th Dist. Ct., Travis Cnty., Tex. May 29, 2018). Over the course of this litigation against Defendants and other Lost Creek directors, at least three separate state court judges have sanctioned Connor or found that she had brought her claims for an improper purpose, including harassment and increasing the cost of litigation. (*See* Orders, Dkt. 38-2).

The present action is the latest chapter in Connor's history of vexatious litigation against Defendants. Considering the second *Baum* factor, the Court finds not only that Connor's claims were asserted in bad faith but also that she subsequently asserted litigation positions in bad faith during this litigation. Despite the Court's previous finding that a litigation update fell "well short of supporting a claim for First Amendment retaliation," *McIntyre v. Castro ("McIntyre I")*, No. 1-15-CV-1100 RP, 2016 WL 1714919, at *4 (W.D. Tex. Apr. 8, 2016), Connor again sued Defendants for approving a "pejorative, premature, partially false, and unnecessary litigation update" in order to "punish" her and "to send a warning to any other citizen who may consider speaking out against Defendants." (Compl., Dkt. 1, at 2). The only alleged falsehood Connor can specifically identify in the update is a statement that the Lost Creek directors had "prevailed in every substantive and procedural ruling to date," (Am. Compl., Dkt. 8, at 3), and that statement appears in a draft—and not in the final version—of the update. (Litigation Status Update, Dkt. 23-2).

Even assuming that (1) that single statement in the draft update was false and further that (2) it might be so destructive a statement as to "chill a person of ordinary firmness" from exercising her First Amendment rights, *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002), Connor has been aware since at least *McIntyre I* that false accusations are not actionable under the Fifth Circuit's First Amendment retaliation jurisprudence. *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999). Even viewed in isolation, it strains credulity to believe that Connor—who has enjoyed a "seventeen-year,

5

extensive litigation career," (Pl.'s Sanctions Brief, Dkt. 37, at 2)—had a good-faith belief that her main First Amendment retaliation claim had merit, (*id.* at 6–7).

Viewed in context, however, the Court can only conclude that Connor has brought this action in bad faith. To her principal claim she added the allegation that Defendants "doubled-down" on her by bringing a motion to dismiss under the Texas Citizens Participation Act ("TCPA") against her. (Compl., Dkt. 1, at 3–4). Connor is referring to a motion that Defendants filed in this Court but which the Court did not address because it dismissed her federal-law claims on other grounds and remanded her state-law claims. *McIntrye II*, 2017 WL 1483572, at *6–7. Connor alleges that Defendants "intentionally presented a motion to the state court . . . even though this Court had DENIED it." (Am. Compl., Dkt. 8, at 4). Connor complains that Defendants "presented the fully-adjudicated [sic] claim to the [state court] on remand . . . as if this court had not already denied the claim." (*Id.*). Connor calls the motion "flagrant forum shopping" designed to "punish[ ] her for daring to speak out." (*Id.*). In other words, Connor alleges that Defendants intended to punish her by filing a defensive motion in state court in a lawsuit that she brought against them.

Connor argued in her hearing that she had a good-faith belief that the Court had denied Defendants' TCPA defense and that it was issue-precluded, which is why she believed the motion was retaliatory. This position is not credible for a number of reasons, chief among them that Connor's extensive litigation experience undermines her assertion that she did not understand the Court's disposition of her claims in *McIntyre II*. In *McIntyre II*, the defendants moved to dismiss her federal claims under Federal Rule of Civil Procedure 12(b)(6) and under the TCPA. Defs.' Mot. Dismiss, *McIntyre v. Castro*, No. 1:16-CV-490 RP, Dkt. 5, at 8 (W.D. Tex. May 5, 2016). The Court granted the defendants' motion under Rule 12(b)(6) with respect to her federal-law claims and remanded the remaining state-law claims. *McIntrye II*, 2017 WL 1483572, at *4, 6. The Court said nothing about the TCPA at all, much less about its application with respect to the claims that the Court remanded. Connor has the experience to understand when a court rules on an issue and when

6

it does not. She therefore knew when she filed both her original and amended complaints in this action that she was alleging that the Defendants had violated her constitutional rights by filing a valid defensive motion in a lawsuit that she had brought against them. That is not merely a meritless claim, it is a bad faith allegation made to harass Defendants.

Connor's filings in this case provide additional support for a finding that she has prosecuted her claims in this action in bad faith. After responding to a motion to dismiss under Federal Rule of Civil Procedure 4(m) by amending her complaint by right, Connor filed a proposed scheduling order, (Dkt. 22), represented that she believed there was a "probable need for electronic forensic discovery," (Pl.'s Report, Dkt. 21, at 2), and asked the Court not to stay this action because it would "serve the ends of justice" to issue a scheduling order and because Defendants "should not be protected from discovery any longer." (Pl.'s Resp. Mot. Prot. Order, Dkt. 23, at 2). One week later, Connor reversed her litigation position, argued that the Court was "prohibited from issuing any order other than an order of dismissal without prejudice," and asked the Court to dismiss the case under Rule 4(m) because she had failed to timely serve her original complaint. (Mot. Recons., Dkt. 25, at 2–3).

The Court does not credit Connor's claim, made at her hearing, that she did not seek a Rule 4(m) dismissal sooner because she was unaware of the rule. Connor admits to a degree of experience too extensive for her to be unaware of Rule 4(m)—especially when Defendants moved for a Rule 4(m) dismissal in their first motion to dismiss. (First Mot. Dismiss, Dkt. 5, at 7). If Connor believed in good faith that the Court "lack[ed] jurisdiction to make any order" other than a Rule 4(m) dismissal, (Mot. Recons., Dkt. 25, at 1), then she would have asked the Court for that relief in her response to Defendants' first motion to dismiss instead of amending her complaint as a matter of course. (Am. Compl., Dkt. 8). Instead, Connor pressed her case with vigor until the Court stayed the case "[i]n light of [her] repeated history of filing similar meritless claims against Defendants." (Order, Dkt. 25, at 2). Only then did Connor decide that the Court was "prohibited from issuing any

order other than an order of dismissal." (Mot. Recons., Dkt. 25, at 2). Either Connor was acting in bad faith (a) when she amended her complaint, opposed dismissal, and insisted that Defendants be subjected to the costs of discovery; (b) when she insisted that the Court had the authority to issue no order other than a Rule 4(m) dismissal; or (c) both.[2] But she could not have taken both positions in good faith. Connor represented to the Court that the case must go on when it suited her purpose to harass Defendants, and then made the opposite representation when it appeared that she would be unable to use this action to harass Defendants. The Court finds that Connor's litigation positions in this action were taken in bad faith and is evidence that she brought this action in bad faith.

Next, the Court must consider the burdens placed by Connor's filings on the Court and on Defendants. *Baum*, 513 F.3d at 189. Connor's previous actions against Defendants before this Court concerned her sixth and seventh amended complaints against them. *See* Sixth Am. Compl., *McIntyre v. Castro*, No. 1-15-CV-1100-RP (W.D. Tex. Dec. 27, 2015), ECF No. 5; Seventh Am. Compl., *McIntyre v. Castro*, No. 1:16-CV-490 RP (W.D. Tex. Apr. 21, 2016), ECF No. 3-7 at 65. The state-court record presented to this Court on removal in *McIntyre II* exceeded five hundred pages. *See* State Court Record, *McIntyre v. Castro*, No. 1:16-CV-490 RP (W.D. Tex. Apr. 21, 2016), ECF No. 3. Connor has filed a high volume of motions in this and her previous actions. The Court finds that Connor's claims have been significantly burdensome to the Court and to Defendants.

Finally, the Court must consider the adequacy of alternative sanctions. *Baum*, 513 F.3d at 189. Connor asks the Court to consider sanctions even less severe than monetary sanctions, such as community service or compulsory education. (Pl.'s Sanctions Brief, Dkt. 37, at 12). However, even monetary sanctions issued by a state court in similar litigation did not deter Connor from filing this action. (*See* Orders, Dkt. 38-2). Connor's extensive and meritless litigation history against Defendants and other Lost Creek directors indicates a commitment to use the courts as a weapon of

---

[2] Connor now argues that she was guilty of nothing more than inconsistent pleading, which is authorized by Federal Rule of Civil Procedure 8. (Pl.'s Sanctions Brief, Dkt. 37, at 7–8). Rule 8 allows a party to asset inconsistent claims or defenses *in a pleading*. Fed. R. Civ. P. 8(d)(2). It does not permit an attorney to file motions or make misrepresentations for the purpose of harassing the other party, which is prohibited by Rule 11. Fed. R. Civ, P. 11(b)(1).

harassment against them. The Court finds that a sanction less severe than a pre-filing injunction would be inadequate.

Having considered all of the *Baum* factors, the Court finds that the imposition of a pre-filing injunction against Connor is warranted. Because the Court finds that Connor has acted with a purpose to harass Defendants in connection with their actions as officers of the Lost Creek Municipal Utility District, the Court will not permit Connor to file claims against Defendants or other officers of the Lost Creek Municipal Utility District without first receiving leave to do so.

### III. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Defendants' Motion for Attorney's Fees and Costs, (Dkt. 32), is **DENIED**.

**IT IS FURTHER ORDERED** that Connor may not file a civil action against Defendants or other officers of the Lost Creek Municipal Utility District, directly or indirectly, in the Western District of Texas without receiving written leave from a federal district judge for this district. Any future complaint against Defendants or other officers of the Lost Creek Municipal Utility District in this district shall be accompanied by a motion for leave, and no summons shall issue unless leave is granted.

**SIGNED** on August 30, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE